UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CLINT PELLEGRIN, ET AL.                         CIVIL ACTION


VERSUS                                          NO: 09-6727


ALLSTATE INSURANCE COMPANY                      SECTION: R(3)



**ORDER AND REASONS**

Before the Court is defendant Allstate Insurance Company's
motion for summary judgment.[1]  Because there are genuine issues
of material fact regarding the total cost of necessary repairs to
plaintiffs' property, the Court DENIES defendant's motion for
summary judgment as to plaintiffs' claim for uncompensated
structural damage.  Because the Court finds that Allstate's
conduct was not arbitrary, capricious, or without probable cause,
the Court grants defendant's motion as to plaintiffs' claims for
statutory bad faith penalties.


**I.    BACKGROUND**

This case concerns an insurance dispute over damage caused
by Hurricane Gustav to Clint and Holly Pellegrin's property.  The
Pellegrins purchased a homeowners insurance policy from Allstate
Insurance Company ("Allstate") for their property located at 103

------

[1]    R. Doc. 70.

Mary Hughes Drive in Houma, Louisiana.  The policy included a limit of $175,000 for the dwelling, $17,500 for other property structures, $141,250 for personal property and contents of the home, as well as additional living expenses for up to twelve months.

On September 1, 2008, Hurricane Gustav damaged the insured property.  The Pellegrins notified Allstate of the damage to their home, and an Allstate claims adjuster visited the property to evaluate the loss.  The Allstate adjuster estimated the total value of the damage to the structure of the Pellegrins' home to be $112,486.52.[2]  On October 14, 2008, the Pellegrins hired All In One Exteriors, LLC ("All In One") to repair the damage caused to their home by the storm.  All In One started repairing the Pellegrins' home but stopped work before completing the repairs. All In One provided the plaintiffs with an invoice for its work in the amount of $108,349.22.

On September 2, 2009, the Pellegrins filed suit in state court against Allstate alleging entitlement to additional

---

[2]     According to Matthew O'Brien, defendant's expert, this figure was adjusted following additional assessments conducted on October 2, 2008 and May 20, 2009.  The total estimated damage to the structure listed in Mr. O'Brien's report is $107,202.47. This figure is based on the calculation of total repair cost of $115,971.49, less the deductible and depreciation of $8,769.02.

payments for losses sustained in the storm.  Allstate removed the case to federal court.[3]

To date, Allstate has paid the Pellegrins $103,736.52 for damage to the structure of their home – a figure derived from the total estimated structure damage of $112,486.52, less a deductible of $8,750.[4]  The Pellegrins argue that this payment is insufficient.  They assert that their total loss should be calculated by adding the $108,349.22 that All In One charged for its work, an amount between $6,000 and $7,000 for the costs plaintiffs expended to perform additional repairs themselves, and the estimated cost to complete the remaining repairs on their home.

The Pellegrins and Allstate each engaged experts to provide estimates of the total amount of damage the Pellegrins' home sustained from the hurricane.  The plaintiffs' expert, V.J. Caro, estimated that the total cost to repair the structure would be $216,500.[5]  Allstate's expert, Matthew O'Brien, opined that the damages the property sustained did not exceed Allstate's initial estimate of $112,486.52 and suggested that the repairs performed

---

[3]    R. Doc. 1.

[4]    In its briefings, Allstate asserts that it paid a total of $103,736.52 (or the total estimate of $112,486.52 less a deductible of $8,750). *See* R. Doc. 70-3, at 2; R. Doc. 70-11. The Pellegrins state that Allstate paid $108,349.22, the value of All In One's repair bill.  R. Doc. 77, at 4.

[5]    R. Doc. 77-4, at 33.

on the property went beyond the actual scope of damages sustained from the storm.[6]  He estimated that the repairs could have been completed for $54,320.53.[7]  In pricing sheets attached to his report, O'Brien also estimated that the cost to complete the remaining areas of work begun by All In One would be $30,715.85.[8]  O'Brien's report also notes that on the date of his inspection, June 30, 2010, the property had been substantially repaired.[9]

Allstate now moves for summary judgment on plaintiffs' remaining claims.[10]  Allstate argues that (1) it is entitled to summary judgment on plaintiffs' claim for additional compensation for structural damage because plaintiffs did not provide competent evidence to dispute Allstate's showing that the payments the company already made are sufficient to compensate the Pellegrins; and (2) Allstate is not, as a matter of law, acting in bad faith because it has a reasonable basis to dispute plaintiffs' claim.  Plaintiffs, on the other hand, contend that a genuine issue of material fact remains as to the amount it will cost to complete the repairs, citing its expert's opinion and that even Allstate's expert found that there were $30,715.85 in

---

[6]   R. Doc. 72-2, at 1.

[7]   *Id.* at 7.

[8]   *Id.* at 9.

[9]   *Id.* at 2.

[10]   R. Doc. 70.

4

additional costs to complete the repairs to the home.  The Pellegrins argue that this $30,715.85 figure is undisputed and therefore demonstrates Allstate's bad faith in refusing additional payment.

## II.  STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

6

## III. DISCUSSION

*A. Structural Damage*

Under Louisiana law, the insured carries the burden "to establish every fact essential to recovery and to establish that the claim falls within the policy coverage." *Williams v. Allstate Indem. Co.*, 359 Fed. Appx. 471, 473 (5th Cir. 2009) (quoting *Ho v. State Farm Mut. Auto Ins. Co.*, 862 So.2d 1278, 1281 (La. Ct. App. 2003)). At trial, the *prima facie* burden would rest with the Pellegrins to show that "they suffered a structure damage loss....in excess of what Allstate has already paid on that claim." *Id.* at 474. Accordingly, at summary judgment, Allstate "need[] only...note...the absence of competent summary judgment evidence on this question to shift the burden to the [Pellegrins] to identify evidence showing a genuine issue of material fact sufficient to preclude summary judgment." *Id.* (citing *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000) ("If the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case.").

Allstate seeks summary judgment limiting its liability under the policy to the amount it has already paid for repairs to the Pellegrins' property. Allstate relies on the opinion of its expert, O'Brien, that plaintiffs did unnecessary work, especially to the roof, and that plaintiffs could have completed the repairs

for the amount Allstate has already paid.  O'Brien's report is
not well-drafted, but it appears to provide an estimate of
$54,320.53 for the total cost of repairs.[11]  O'Brien's report
also indicates that in his opinion, Allstate does not owe the
plaintiffs additional money.

Allstate further argues that plaintiffs have not come
forward with evidence of the cost necessary to complete the
repairs to their home.  On this issue, the Court notes that
plaintiffs' method of calculating the estimated cost of
completion is untenable.  Their expert, Caro, examined
plaintiffs' home and provided an estimate of the total cost to
repair the home as if no repairs had been done.  Caro's total
cost estimate answers the wrong question.  Allstate has already
paid plaintiffs $103,736.52 for the repairs to the structure of
the Pellegrins' home.  At this point, therefore, plaintiffs'
burden is to show why the amount already paid is insufficient.
Plaintiffs argue that they can simply subtract All In One's
invoice for the work already completed from Caro's estimate to
get an estimate of the remaining amount Allstate must pay.  This
is not an appropriate measure of the cost of completion because
the record contains only Caro's estimate of the total cost of
repairs without addressing the question of what has been
undercompensated or what repairs are left to be done that

_____

[11]     R. Doc. 72-2, at 7.

Allstate refuses to fund.  Caro's estimate is therefore legally
insufficient to establish damages.

O'Brien's conclusion is that Allstate paid plaintiffs enough
money to repair covered losses to their home.  His report does
contain an estimate of the amount it would take to finish work
begun by All In One, pretermitting the question of whether all of
the work All In One did should have been done in the first place
or done in the same manner.  But when this estimate is fairly
read in the context of the report as a whole, it becomes clear
that O'Brien's position is that Allstate paid the plaintiffs
enough money, plaintiffs spent at least some of this money to
complete unnecessary repairs and upgrades, and so even if work
remains to be done, that does not mean that Allstate's payment
did not sufficiently compensate plaintiffs for their losses.
Nevertheless, plaintiffs contend that the repairs are unfinished,
and the record does contain an estimate of the cost of finishing
the work started by All In One.  At least some of the work items
listed in O'Brien's $30,715.85 estimate are for areas that
suffered wind damage.  Based on this record, the Court cannot say
as a matter of law that there is no evidence to create an issue
of fact that some additional amount of money may be due the
plaintiffs to complete covered work on their home.  As a result,
summary judgment is inappropriate at this time.

*B. Bad Faith*

Louisiana law imposes penalties on insurers who arbitrarily or capriciously fail to pay a claim. *See* La. Rev. Stat. §§ 22:1892, 22:1973(b)(5).[12]  In order to recover the statutory penalties, a claimant must demonstrate "that his insurer (1) received satisfactory proof of loss, (2) failed to pay within the required time,[13] and (3) acted in an arbitrary and capricious manner." *La. Bag Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1112-13 (La. 2008).  The Louisiana Supreme Court has interpreted "arbitrary and capricious" to mean vexatious. *La. Maint. v. Certain Underwriters*, 616 So.2d 1250, 1253 (La. 1993). A vexatious refusal to pay is a refusal that is "unjustified, without reasonable or probable cause or excuse." *La. Bag Co., Inc.*, 999 So.2d at 1114 (citing *Reed v. State Farm Mut. Auto Ins. Co.*, 857 So.2d 1012, 1021 (La. 2003)).  The statutes penalize insurers "whose willful refusal of a claim is not based on a good-faith defense." *Id.* (citing *Reed*, 857 So.2d at 1021).  When the extent of loss is contested, the insurer is not required to pay all of the insured's claim within the statutory period to

_____

[12]    Sections 22:1892 and 22:1973 were previously numbered as §§ 22:658 and 22:1220, respectively.  Furthermore, the Louisiana Supreme Court has noted that both statutes incorporate the same standard and proscribe the same conduct. *Reed v. State Farm Mut. Auto Ins. Co.*, 857 So.2d 1012, 1020 (La. 2003).

[13]    La. Rev. Stat. §§ 22:1892 and 22:1973 set statutory time periods of thirty and sixty days respectively.

avoid penalties, rather the insurer need only tender the "undisputed portion" of the claim, or "the reasonable amount which is due." *Id.* at 1114-15 (citing *McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1091-92 (La. 1985)).

The bad faith statutes are penal in nature and should be strictly construed. *McDill*, 475 So.2d at 1092. "The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is *clear* that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay." *Reed*, 857 So.2d at 1021 (emphasis added); *see also Holt v. Aetna Cas. & Sur. Co.*, 680 So.2d 117, 130 (La. App. 1996)("In bad faith actions, the insured is seeking extra-contractual damages, as well as punitive damages. Therefore, the insured's burden is great."). The Court should impose penalties only "when the facts 'negate probable cause for nonpayment.'" *La. Bag Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1114 (La. 2008)(quoting *Guillory v. Travelers Ins. Co.*, 294 So.2d 215, 217 (La. 1974)). Since the insured bears the burden to prove bad faith, *Reed*, 857 So.2d at 1021, plaintiffs must set forth specific facts indicating that a genuine issue exists for trial. *Celotex*, 477 U.S. at 324-25. They cannot rely on the pleadings alone. *Id.*

Allstate moves for summary judgment on plaintiffs' bad-faith claims. Specifically, it argues that the evidence in this case

11

establishes that the dispute between the parties is nothing more than a good-faith disagreement about whether plaintiffs are entitled to further insurance proceeds.  The Pellegrins contend that Allstate's expert agreed that $30,715.85 is needed to complete the repairs to the structure, which they assert demonstrates Allstate's bad faith in resolving their claim.

Plaintiffs misconstrue O'Brien's report by reading it to be a concession that $30,715.85 more is owed.  Although O'Brien's report estimated that the cost to complete the work begun by All In One would be $30,715.85, he does not assert that this figure represents an additional amount Allstate owes the plaintiffs. Rather, O'Brien's position, as explained earlier, is that the amount Allstate already paid plaintiffs was enough to fully compensate the plaintiffs for necessary repairs done properly. Therefore, even if work remains to be done, this does not mean that Allstate's payment was insufficient.

Allstate has paid $103,736.52 for the repairs to the structure of the Pellegrins' home.  Allstate contends that this payment is sufficient, relying on its expert's opinion that All In One did unnecessary work on the plaintiffs' home, and that the damages to the property did not exceed Allstate's initial estimate of $112,486.52.  Based on its initial estimate and O'Brien's report, Allstate had a reasonable basis to dispute

12

plaintiffs' claims for additional amounts. *See, e.g., Jackson v. State Farm Fire & Cas*. *Co.*, 2010 WL 724108, at *6 (E.D. La. Feb. 22, 2010) (finding no issue of fact when "the evidence disclose[d] nothing more than a coverage dispute"); *Chateau Argonne Condo. Assoc. v. State Farm Ins. Co.*, 2008 WL 4411654, at *4 (granting summary judgment on plaintiff's claims for bad faith penalties when the insurer had paid plaintiff more than the initial estimate, and the parties disagreed about the value of additional necessary repairs). Accordingly, the Court finds that Allstate is entitled to judgment as a matter of law as to the claims for statutory bad faith penalties.

IV.   **CONCLUSION**

For the foregoing reasons, the Court DENIES summary judgment in part and GRANTS summary judgment in part.


New Orleans, Louisiana, this 23rd day of March, 2012.


_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

14